Sefer A. Markley v. Commissioner. Wilma L. Markley v. Commissioner.
Markley v. Commissioner
Docket Nos. 10172 and 10173.
United States Tax Court
1948 Tax Ct. Memo LEXIS 216; 7 T.C.M. (CCH) 198; T.C.M. (RIA) 48056; April 14, 1948
*216 Partnership. - Held, that petitioners, husband and wife, were partners doing business under the firm name of M & M Truck Company. Income. - Held, that the business of M & M Truck Company did not have additional unreported income from certain bank deposits as determined by respondent. Depreciation. - Useful life of motor tractors and tank trailers used in the business determined. Harry S. Silverstein, Esq., 922 Equitable Bldg., Denver 2, Colo., and William H. Goldberg, C.P.A., 520 University Bldg., Denver 2, Colo., for the petitioners. Frank M. Cavanaugh, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: These consolidated proceedings involve income tax deficiencies determined by respondent against each petitioner, respectively, and also overpayments claimed by each petitioner, for the years and in the amounts, as follows: Sefer A. Markley
Wilma L. Markley
Year
Deficency
Overpayment
Deficiency
Overpayment
1939
$ 697.24
$ 311.21
None
None
1940
24,122.02
3,624.37
$10,833.94
None
1941
1,703.75
2,801.53
1,675.66
$186.91
Totals
$26,523.01
$6,737.11
$12,509.60
$186.91
*217 The issues presented are whether respondent erred in determining (1) that petitioners, husband and wife, were not partners operating a trucking business under the firm name of M & M Truck Company during each of the years 1939, 1940, and 1941; (2) that an estimated portion of certain bank deposits constituted unreported income of that business in the amounts of $5,498.25 for 1939, $15,422.99 for 1940, and $14,488.36 for 1941; and (3) that depreciation should be computed on the basis of a useful life of four years for tractors and five years for trailers used in that business for each of the years 1939, 1940, and 1941 instead of a claimed useful life of three and four years, respectively. The petitioners have abandoned allegations of error as to respondent's disallowance of certain claimed bad debt deductions for 1940 and 1941. The deficiencies determined against Wilma L. Markley were asserted by respondent "to protect the Government's interest" in the event the claim for recognition of the partnership should prevail in this litigation. The proceedings were submitted upon testimony, documentary evidence, and a stipulation of certain facts, together with exhibits attached to the *218 stipulation. The stipulated facts are included herein by reference as part of our findings of fact. Findings of Fact Petitioners are husband and wife, residing at East 59th Avenue and Highway No. 6 in Adams County, just outside the City of Denver, Colorado. Individual income tax returns of Sefer A. Markley for the years 1939, 1940, and 1941 and separate individual income tax returns of Wilma L. Markley for the years 1940 and 1941 were each made on the accrual basis and filed with the collector for the district of Colorado. No partnership returns were filed under the firm name of M & M Truck Company for the years involved herein or any prior years. The petitioners, respectively, and the respondent through the successive execution of written waivers extended the time for assessment up to January 1, 1946, for each of the years involved herein, and the deficiency notice to each petitioner was mailed on November 29, 1945. Claims for refunds, in undisclosed amounts, were filed by Sefer A. Markley on March 15, 1943 and April 14, 1943 and by Wilma L. Markley on January 31, 1944. Each petitioner made partial payments of income taxes shown to be due on their respective tax returns when *219 those returns were filed, and the amounts and dates of such payments were as follows: Sefer A. Markley
Wilma L. Markley
Taxable Year
Amount
Date Paid
Amount
Date Paid
1939
$ 77.81
March 15, 1940
None
1940
2,494.53
March 14, 1941
$ 76.83
March 14, 1941
1941
703.89
April 14, 1942
132.94
March 13, 1942 The petitions herein were filed on February 18, 1946. The petitioners were married in 1923 when Sefer was 19 and Wilma 18 years of age. During parts of 1923 and 1924, Wilma worked an saved all her earnings while living with her parents and apart from her husband; and, thereafter, she had separate earnings, from doing work outside the home, which she saved. Prior to 1934 Sefer owned and operated a garage and service station at Weldona, Colorado, and in that business Wilma sold gasoline and kept the books. From time to time they discussed entering into a joint business enterprise of purchasing a tractor and tank trailer and transporting pertroleum products. In 1934 the petitioners jointly negotiated the purchase of a Dodge tractor and a Fruehauf trailer from Blauer-Markley Motor Company, in which concern Sefer's brother, Fred Markley, *220 had an interest, and Wilma made the down payment consisting of $650 of her own separate money, earned through her employment outside the family circle, plus $150 borrowed from her father. Sefer made a payment of $856 from his own funds for the purchase of a tank which was mounted on the trailer. That first piece of equipment was registered in Sefer's name. At that time the mutual understanding of Sefer and Wilma was that the latter was not making a loan of her $650 but that each was contributing to a joint venture or partnership on the basis of a 55 per cent interest in Sefer and a 45 per cent interest in Wilma. Sefer's brother, Fred Markley, who sold them the tractor and trailer, also understood at that time that Sefer and Wilma were starting a partnership business. Sefer and Wilma immediately started their trucking business in 1934 under the firm name of M & M Truck Company, which name was painted on their equipment and used on their letterheads. During the first year of operations, they could not afford to hire any drivers so Wilma accompanied Sefer as a relief driver and they took turns driving and sleeping on the long hauls. At first and for only a short time they transported *221 crude oil from a well near Casper, Wyoming, to a refinery at Adams City, near Denver, and then they transported gasoline from McPherson, Kansas, to Denver, a haul which required from 24 to 36 hours of continuous driving. They withdrew from the business only such funds as were necessary for living expenses, including a hired girl to look after their home. After the first year of operations and out of profits realized therefrom, they repaid the $150 loan from Wilma's father, made the down payment on an additional piece of equipment, and hired extra drivers. During all the years from 1934 and including the taxable years involved no new capital was contributed directly by either Sefer or Wilma from any source outside their business, and they continued the practice of withdrawing only such profits as were required for their living expenses and used the other profits from the business to expand it by acquiring business property and additional units of equipment, each unit consisting of a tractor and tank trailer. In some instances they jointly signed notes for the balance of the purchase price due on new equipment, while at other times Sefer alone signed the notes. Part of their equipment *222 was registered in Wilma's name and part in Sefer's name. Title to their Casper, Wyoming, terminal was taken in Wilma's name. Their home and business office was first located at Fort Morgan, Colorado, but in 1936, at which time they owned eight units of equipment, they moved to Denver and purchased a home in their joint names. They used the basement of the house as a business office until the office was moved to another small frame building in 1940. Title to their present terminal and office building, in or near Denver, erected in 1942, was taken in and is in Wilma's name. From 1934 on, and including the years in question, Sefer and Wilma were held out to and known by various parties, with whom they did business, as partners, operating under the firm name of M & M Truck Company, and many of such parties dealt directly with Wilma about as often as they did with Sefer on various business matters including the purchase of equipment and repair parts, financial matters, and in giving orders for transportation service. Throughout the years from 1934 to and including the taxable years in question the petitioners had no written partnership agreement. Also, during that period Wilma's name *223 did not appear on the intrastate and interstate common carrier certificates under which the business was operated, which certificates are more particularly described in the next succeeding paragraph. However, during that period the petitioners had a definite understanding that they were partners, with Sefer having a 55 per cent interest and Wilma having a 45 per cent interest in the business of M & M Truck Company; and, during that period, each of them rendered vital services in the operation and continued growth of the business and jointly acted in a managerial capacity. In 1942 and because it was anticipated that Sefer might be drafted into the war service, Wilma instituted suit in the District Court in and for the City and County of Denver and State of Colorado, against Sefer for a declaratory judgment as to her partnership interest in the M & M Truck Company, and after a hearing the Court entered its decree on November 24, 1942, that Wilma had a 45 per cent interest in that business and had had such an interest from its inception. During the first year or so of operations no interestate common carrier certificate was required, at least to the knowledge of the Markleys. Thereafter *224 they were advised to obtain such a certificate from the Interstate Commerce Commission. Application was made and a certificate was issued, under the so-called "grandfather rights," in the name of Sefer A. Markley, doing business as M & M Truck Company. That certificate was applied for in Sefer's name alone more as a matter of convenience than for any other reason and without any intention of thereby signifying that he was actually the sole proprietor of M & M Truck Company. At that time and during subsequent years, both petitioners regarded the common carrier certificates as merely permits to operate vehicles for transporting petroleum products over certain routes and not as a legally binding designation of the owners of the business. Shortly prior to 1938, at a time when petitioners did not have sufficient equipment to meet the demands of their intereste transportation service, Sefer requested an intrastate carrier, H. M. Melton, to operate a piece of the latter's equipment on the Markleys interstate route and under the Markleys' certificate, but it was not a joint operation and each retained the freight revenues collected from the operation of their separate vehicles. Subsequently *225 the Markleys had an opportunity to transport petroleum products to Salt Lake City but did not have sufficient equipment so Sefer Markley and Melton split the costs in obtaining an interstate certificate in about December 1938 in the name of H. M. Melton and S. A. Markley, copartners, doing business as Melton and Markley, which was transferred in February 1939 to Melton and Markley, Inc. Under those certificates the Markleys and H. M. Melton, respectively, operated their separate equipment and collected their separate revenues from such operations until the Interstate Commerce Commission advised them they could not operate in that manner. Thereupon by agreement of the parties Markley's original interstate certificate was transferred to Melton and the certificate in the name of Melton and Markley, Inc., was transferred by order of the Commission, dated May 2, 1939, to S. A. Markley, doing business as M & M Truck Company. The Markleys continued operating under that latter certificate until the Commission issued an order in July 1943 transferring it from S. A. Markley, doing business as M & M Truck Company, to S. A. Markley and Wilma L. Markley, a partnership, doing business as M & M Truck *226 Company, based on a request by Sefer for such transfer originally made in June 1941. H. M. Melton was never in business with the Markleys as a partner and no corporation was ever organized under the name of Melton and Markley, Inc. From 1934 until the latter part of 1938 Wilma in addition to managing the office, kept all the books and records of M & M Truck Company by her own method of accounting, which consisted mainly of entries of income and expenses and records on their equipment. In the fall of 1938 Sefer and Wilma employed an accountant to open a more complete set of books and advised him at the time that they were partners. The books were set up under the name of M & M Truck Company on the accrual basis to reflect revenues from the freight bills but did not show any partnership capital accounts for Sefer and Wilma, respectively. Wilma Markley continued to keep the books for the business from the fall of 1938 until November 1939 when Sefer and Wilma employed L. C. Boswell as their office assistant in matters pertaining to accounting. Boswell was advised at that time that Sefer and Wilma were partners and during the period of his employment by them until May 1941, he took *227 instructions from both of them as joint managers of the business. The growth of the business required better accounting records and, as of the first of 1940, Boswell installed a new accounting system to comply with the Interstate Commerce Commission Regulations under the Carriers' Act. The new books, under the name of M & M Truck Company, were set up on the accrual basis from the then existing records with some necessary adjustments and they reflected the capital accounts of Sefer and Wilma as partners in the business. The freight revenue, which was the only source of income, was entered on the books from the freight bills and reflected in accounts receivable. A main set of books was set up to reflect the revenues and expenses of the interstate business, which at that time consisted of transporting petroleum products for the Standard Oil Company, and a subsidiary set of books was opened to reflect separately the intrastate business carried on with two or three pieces of equipment and which phase of the M & M Truck Company's business was handled almost exclusively by Wilma. Early in 1940 Fred Hansen of the Interstate Commerce Commission inspected the books and records of M & M Truck *228 Company and stated that since the carrier certificate was then in the name of S. A. Markley, doing business as M & M Truck Company, the books of account should reflect a sole proprietorship so as to be in conformity therewith, and he further suggested that an application be filed for a transfer of the certificate to Sefer and Wilma as copartners. Application for such a transfer was not made until June 1941 and no change was made in the books of account; however, the necessary reports filed with the Interstate Commerce Commission from time to time up to 1943 continued to reflect a sole proprietorship business in conformity with the carrier certificate during that period of time. Prior to and during the years in question a bank account was maintained at the First National Bank at Fort Morgan, Colorado, and used as the regular and main business account of the M & M Truck Company. That account was maintained in the name of S. A. Markley, subject to the signature of either S. A. Markley or Wilma L. Markley, until October 9, 1939, when it was changed to the name of M & M Truck Company, subject to the same signatures. After the Markleys moved to Denver in 1936 they made deposits in the *229 Fort Morgan account by mail. On August 27, 1938 another and subsidiary bank account was opened in the Central Savings Bank and Trust Company of Denver (hereinafter referred to as Central Savings) in the name and subject to the signature of S. A. Markley and on September 7, 1939 it was changed to a joint account subject to the signature of either S. A. or Wilma L. Markley, but on September 23, 1941 it was made subject only to the signature of S. A. Markley. The Central Savings account was opened for the purpose of keeping the intrastate business separate from the interstate business, but it was also regularly used as an "exchange account" or a "clearing house account," that is to say, for depositing cash collections on the interstate business and writing checks thereon for deposit by mail in the Fort Morgan account. A reconciliation of both bank accounts was made each month. Also, the Central Savings account was used in carrying out a business policy maintained for the convenience of customers, which consisted of M & M Truck Company making payment to consignors on behalf of the consignees for the price of gasoline, plus tax, when a tank trailer was filled at the "oil dock" of the consignor, *230 and then upon delivery collecting from the consignee the price of the gas and tax thereon plus the freight charge; and that practice accounted for withdrawals from and deposits in the Central Savings account in large amounts compared with the freight revenue derived from such haulage. The Markleys derived no income from that practice other than the regular freight revenue. In March 1941 the M & M Truck Company's frame office building was destroyed by a fire which also destroyed its books of account and canceled checks for earlier years and partially destroyed other records but not those on its motor equipment. Thereafter and with respect to the years here involved, a revenue agent made an examination of the M & M Truck Company in 1942 at which time no partnership question was involved so far as his examination was concerned. The agent conceived the idea that the Central Savings bank account probably reflected items of income which had not been reported, and since the M & M Truck Company's records prior to March 1941 were not complete, he made an analysis of the bank records of that account for the years 1939, 1940, and 1941, but he made no examination of the Fort Morgan bank account. *231 As stipulated by the parties, the Central Savings account reflected the following total deposits and withdrawals. Balance
Withdrawals
Year
Jan. 1
Deposits
by Check
1939
$ 994.68
$47,458.09
$46,959.84
1940
1,492.93
60,924.08
61,587.06
1941
829.96
18,729.68
18,485.33
1942
1,074.31 The agent treated all deposits as items of income from the business although he had no knowledge of the source thereof. By considering deductible items appearing on the tax returns and information from other sources not identifiable at the time of the hearing and also by mere estimate, the agent arrived at the amounts of the withdrawals which he considered as representing allowable business expenses. He also estimated nondeductible personal expenses. A summary of his analysis, as stipulated by the parties, is as follows: 1939
1940
1941
Withdrawals
$46,959.84
$61,587.06
$18,485.33
Less items deemed not deductible
5,000.00
16,085.97
14,244.01
Deductible items
$41,959.84
$45,501.09
$ 4,241.32
Deposits
47,458.09
60,924.08
18,729.68
Taxable income
$ 5,498.25
$15,422.99
$14,488.36 Those amounts designated as taxable income *232 were determined to constitute additional unreported taxable income for each of those years, respectively, in the determination of the asserted deficiencies. For each of the years 1939, 1940, and 1941 the books of the account of the M & M Truck Company were kept on the accrual basis and its income from freight charges, which was its only source of income, was accrued from the freight bills, irrespective of the time of the collection thereof, and the petitioners' tax returns were made on the accrual basis and in accord with its books of account. The total deposits in the Central Savings account did not represent income from the business for large amounts thereof in each of those years but represented merely repayments of the amounts advanced by the Markleys on behalf of customers for the f.o.b. price of gasoline, plus tax, being transported for such customers and amounts other than those representing such repayments constituted cash deposits for transfer by check to the Fort Morgan bank account. The amounts of $5,498.25 for 1939, $15,422.99 for 1940, and $14,488.36 for 1941 of deposits in the Cetral Savings bank account did not constitute unreported income of M & M Truck Company for *233 each of those years. In the course of his examination for the years in question the revenue agent considered that the M & M Truck Company equipment was being depreciated too repaidly although he did not consider the actual mileage of such equipment, and he adjusted the claimed rate of depreciation based on a useful life of three years on tractors and four years on trailers to a rate based on four and five years, respectively, which was used in the determination of the deficiencies involved herein. In the years prior to and during the years in question, actual experience showed that the average useful life, from the standpoint of profitable operation, in the business of the M & M Truck Company was three years for tractors and our years for trailers and for that reason the company has endeavored to follow the practice of selling or trading in its equipment within those periods. The average mileage for each piece of the company's equipment was 150,000 miles in 1939, 168,000 miles in 1940, and 150,000 miles in 1941 over routes so rough that they were used for experimental runs in testing the durability of similar equipment. Another factor in the useful life of such equipment, in the *234 nature of obsolescence, was that in each year new tractors were being made with greater motive power and new trailers were being made with greater load capacity without increasing the weight of the trailer, and competition required the use of equipment providing the greatest load capacity per trip on long hauls. Another factor in the life of tank trailers used in the business of the M & M Truck Company was that after four years of usage, if not before, the metal in the tanks tended to crystallize resulting in cracks and leaks and while they might have some remaining usefulness for short hauls or some other purpose, they were unprofitable to operate on long hauls. During 1939 the M & M Truck Company sold none of its equipment; during 1940 it sold one tractor and two trailers; and during 1941 it sold seven tractors and six trailers and also one body tank. As to such equipment sold during 1940 and 1941 the averages for the cost, the sales price, the depreciation claimed, the profit realized after adjustment for its claimed rate of depreciation, and the period of years owned were as follows: Average
Average
Average
Average
Average
Depreciation
Profit After
Years
Equipment
Cost
Sales Price
Claimed
Depreciation
Owned
8 tractors
$3,467.10
$1,393.75
$2,525.16
$451.81
1.75
8 trailers and
body tank
3,028.74
1,894.90
1,219.50
85.66
1.25
*235 During the years 1942 to 1944, inclusive, the M & M Truck Company sold 15 tractors, 9 trailers, and a body tank. As to such equipment, the averages for the cost, the sales price, the depreciation claimed, the profit realized after adjustment for its claimed rate of depreciation, and the period of years owned, were as follows: Average
Average
Average
Average
Average
Depreciation
Profit After
Years
Equipment
Cost
Sales Price
Claimed
Depreciation
Owned
15 tractors
$3,375.60
$2,173.33
$3,148.20
$1,945.93
3.56
9 trailers and
body tank
2,963.87
2,775.00
2,488.02
2,299.15
3.35 During those war years the resale price was abnormally high for used equipment of that type, irrespective of its age or mechanical condition, and furthermore on eight tractors and trailers the sale price included certain of the M & M Truck Company's contracts for hauling petroleum products. The petitioners sold much of their equipment because of the high prices offered and because of the difficulty in obtaining drivers. On April 30, 1944, the M & M Truck Company had on hand 9 tractors and 13 trailers which had been acquired between August 10, 1939 and December 31, 1941 and *236 had been in use for an average of 3.75 years and four years, respectively. They were kept on hand as extra or spare equipment and were not regularly used. The average useful life of the tractors and trailers used in the business of the M & M Truck Company was three years for tractors and four years for trailers. In March 1940 the office assistant Boswell advised petitioners to file a 1939 partnership return for M & M Truck Company, but they took the advice of other accountants not to do so because the reports to the Interstate Commerce Commission showed a sole proprietorship in Sefer A. Markley in conformity with the carrier certificate. Accordingly, Sefer A. Markley's individual original income tax return for 1939 reported, on the accrual basis, the income of the trucking business operated under the name of the M & M Truck Company. His original tax returns for 1940 and 1941 followed a similar pattern for reporting income, except that for those two years Wilma L. Markley also filed individual returns, on the accrual basis, on which she reported that portion of the M & M Truck Company's income which was derived from the interstate business and deducted depreciation on the two or *237 three trucks used in that phase of the business, and she also reported a salary of $3,600 from the company for each of those two years although she did not withdraw more than two-thirds thereof. The fact that Wilma reported the income from the intrastate phase of the business was not intended to reflect the extent of her actual interest in the whole business of the M & M Truck Company. Sefer A. Markley filed certain amended returns and claimed that for each of the years 1939, 1940, and 1941 the income from the trucking business conducted under the name of M & M Truck Company should have been reported on the basis of a partnership in which the interests were 45 per cent in his wife, Wilma, and 55 per cent in himself. In determining the deficiencies asserted against Sefer A. Markley, the respondent denied the existence of the claimed husband and wife partnership and made certain other adjustments, including the disputed amounts determined by respondent to represent unreported income reflected in the deposits in the Central Savings bank account and also the disputed allowances by respondent for deductible depreciation which also embraces certain adjustments by him, as set forth in the *238 stipulation, as to the gain or loss on tractors and trailers sold in 1940 and 1941. In determining the deficiencies asserted against Wilma L. Markley, respondent increased her reported net income to equal 45 per cent of the income of the M & M Truck Company as determined by him. Opinion These consolidated proceedings present three issues, all of which are questions of fact. The first issue is whether, during the taxable years, a valid partnership existed between the petitioners for income tax purposes. There is no question as to Sefer A. Markley having a real interest in the business conducted under the firm name of M & M Truck Company; in fact, the respondent contends that it was his sole proprietorship. The ultimate question presented is, whether under the facts, the wife, Wilma L. Markley, was a real partner in that business within the tests announced in ; and ). In applying those tests we are presented with the subsidiary questions of whether the wife invested capital originating with her, of whether she substantially contributed to the control and *239 management of the business, of whether she otherwise performed vital additional services, or of whether she did all those things. In our opinion, the enumerated subsidiary questions and consequently the ultimate question must all be answered in the affirmative. Here we have a fairly large trucking business which over a period of years has grown from a very small beginning in 1934, consisting of an original capital investment of $856 contributed by Sefer on his own behalf and $650 contributed by Wilma on her behalf out of funds originating from her separate earnings outside the family circle, plus $150 borrowed from Wilma's father, which capital was used for the down payment on one tractor and tank trailer to start the business enterprise. The growth of the business has been due to the mutual efforts of Sefer and Wilma in both management of and services rendered in the business, together with their consistent practice of plowing back into the business the profits which their combined efforts produced. It is conclusively shown that throughout the years Wilma's participation in the management of the business was substantial and her services rendered in the regular daily operation of *240 the business were vital and also clearly in addition to Sefer's services. From the beginning in 1934 up through the years in question the petitioners had no written agreement or articles of partnership. However the record definitely establishes that, at the time they each contributed their separate funds for the purchase of their first unit of equipment in 1934, they mutually understood and agreed that each was contributing to a joint venture or partnership on the basis of a 55 per cent interest in Sefer and 45 per cent interest in Wilma. That understanding continued throughout the years in question and pursuant thereto title to certain business real property was held in Wilma's name; part of their equipment was registered in Wilma's name and part in Sefer's name; in some instances they jointly signed notes for the balance due on new equipment; the main business bank account at Fort Morgan was subject to withdrawals by both of them; the other bank account maintained at Central Savings in Denver from 1938 on was a joint account during the period from September 1939 to September 1941; and they were known to and dealt with as partners operating under the firm name of M & M Truck Company *241 by many parties with whom they did business. In our opinion the acts and conduct of Sefer and Wilma, pursuant to their mutual understanding as to their business relationship, establish a partnership between them as that term was defined in the Tower case, supra, to wit: " "A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses"; and we conclude that the validity of such partnership should be recognized for income tax purposes on the basis of a 55 per cent interest in Sefer and a 45 per cent interest in Wilma. In our opinion the evidence supporting the above conclusion outweights conflicting evidence of facts as hereinafter mentioned in this paragraph and relied upon by respondent in his determination and his contention here of a sole proprietorship in Sefer A. Markley. It is a fact that the books of account of the M & M Truck Company did not reflect partnership capital accounts until so set up as of the first of 1940 by a regularly employed office assistant and accountant, but prior thereto the books *242 and records were maintained, from 1934 to the fall of 1938, by Wilma according to her own methods of recording income, expenses, and equipment owned, and from the fall of 1938 until the fall of 1939 the books were maintained by Wilma according to an accrual system installed by an accountant, and, further, the systems of accounting employed prior to 1940 were not intended by petitioners to signify the existence of a sole proprietorship. Neither book entries nor the lack thereof are controlling as to the actual ownership of a partnership interest, . The fact that the common carrier certificates under which the M & M Truck Company operated did not contain the name of Wilma L. Markley and the fact that the company's various reports to the Interstate Commerce Commission indicated that Sefer A. Markley was the sole proprietor of the business are of little, if any, purport. See , where the husband filed with the county clerk "Certificate of Persons Conducting Business Under An Assumed Name" in which he stated that he was conducting the business as the sole owner; , *243 in which the husband had filed with the proper official a certificate of doing business as an individual and had not changed the certificate after his wife was taken into the partnership and in which case the husband, after his wife was taken into the partnership, filed employer's tax returns as owner of the business; and , where an excise tax return under the Social Security Act was signed by the husband and the "form of organization" was checked therein as "individual". Petitioners herein regarded the common carrier certificates as merely permits to operate motor vehicles, for transporting petroleum products over certain routes and not as legally binding designations of the owners of the business, and the facts as to the manner of their actual operations throughout the many years bear them out in that regard. Furthermore the practice of indicating in the reports on the business to the Interstate Commerce Commission that Sefer A. Markley was the sole proprietor was followed so that the name in which the reports were filed would be in conformity with the certificates. The fact that no partnership returns were filed for the M & M Truck *244 Company for the years in question was due to the advice of accountants. The fact that a declaratory judgment was entered in November 1942 does not indicate that the partnership was not formed until that time; and furthermore such declaratory judgment is not controlling in the matter of this Court's determination as to the recognition of a family partnership for income tax purposes. , certiorari denied ); and . The respondent erred in failing to recognize the existence of a valid partnership between Sefer A. and Wilma L. Markley during the years in question on the basis of a 55 per cent and 45 per cent interest, respectively, and the taxes in controversy in both docket Nos. 10172 and 10173 will be recomputed on that basis under Rule 50. The second issue is whether certain portions of deposits in the Central Savings bank account in amounts as estimated by respondent for each of the years in question constituted additional unreported income of the M & M Truck Company. The facts herein show conclusively that the respondent's determination *245 is grossly erroneous in that his estimate of so-called unreported income is based on total deposits in the Central Savings account which deposits included large amounts constituting redeposits of funds theretofore withdrawn in connection with an accommodation service rendered to customers without profit. In addition to overcoming the prima facie correctness of respondent's determination, the facts further establish that for each of the years in question the books of account of the M & M Truck Company were kept on the accrual basis, that the only source of income was freight revenue which was accrued as income from the freight bills for services rendered and irrespective of subsequent cash collections on such bills, and that the tax returns were made on the accrual basis and in accordance with the books of account. Since the accounts were kept and the income reported on the accrual basis in accordance with the books, the amount of cash deposits in bank is not a proper criterion for determining income. The respondent erred in his determination that the business of the M & M Truck Company had additional unreported income in the amounts of $5,498.25 for 1939, $15,422.99 for 1940, and *246 $14,488.36 for 1941. The third issue involves the question of the useful life of the tractors and trailers used in the business of the M & M Truck Company during 1939, 1940, and 1941, and we have found as a fact that such useful life is three years for tractors and four years for trailers, That finding is clearly borne out by the testimony as to the actual usage of the equipment in the M & M Truck Company's business and also by the figures set out in the findings relative to its disposition of equipment during 1940 and 1941, two of the three tax years here in question. The figures set out in the findings relative to the company's disposition of equipment in subsequent years during which war conditions and abnormally high prices obtained, do not in our opinion affect our determination of the normal useful life of the equipment in the taxable years before us during which normal conditions obtained. The parties have stipulated all other factors necessary for computing the correct allowance for depreciation for each of the years in question and also for computing gain or loss on equipment sold during 1940 and 1941. The respondent erred in his determination of allowable depreciation. *247 Decision in each proceeding will be entered pursuant to Rule 50.